# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FIDELITY EXPLORATION AND
PRODUCTION COMPANY,
　　　　　　*Plaintiff-Appellant,*

　　　　　v.

UNITED STATES OF AMERICA;
UNITED STATES DEPARTMENT OF THE
INTERIOR; GALE NORTON, in her
official capacity as United States
Secretary of the Interior;
BUREAU OF INDIANS AFFAIRS, U.S.
DEPARTMENT OF INTERIOR; DAVID
ANDERSON, in his official capacity
as Assistant Secretary, Bureau of
Indian Affairs,
　　　　　　*Defendants-Appellees.*

No. 06-35307

D.C. No.
CV-04-00100-
RFC/RWA

OPINION

Appeal from the United States District Court
for the District of Montana
Richard F. Cebull, District Judge, Presiding

Argued and Submitted
October 15, 2007—Seattle, Washington

Filed November 6, 2007

Before: Betty B. Fletcher, Arlen C. Beam,* and
Pamela Ann Rymer, Circuit Judges.

Opinion by Judge Rymer

---

*The Honorable Arlen C. Beam, Senior United States Circuit Judge for
the Eighth Circuit, sitting by designation.

**COUNSEL**

Jon Metropoulos and Dana L. Hupp, Helena, Montana, for plaintiff-appellant Fidelity Exploration & Production Co.

Sue Ellen Wooldridge, Assistant Attorney General, and Patricia Miller, Todd Aagaard, Amber Blaha, and James O. Payne, Jr., Environment and Natural Resources Division, U.S. Department of Justice, Washington, DC, for defendant-appellee the United States.

**OPINION**

RYMER, Circuit Judge:

Fidelity Exploration & Production Co. seeks to quiet title to a portion of the bed of the Tongue River on which it holds oil and gas leases issued by the State of Montana, but to which the United States lays claim as trustee for the Northern Cheyenne Indian Tribe. The district court dismissed the action, brought under the Quiet Title Act (QTA), 28 U.S.C. § 2409a, for lack of jurisdiction because the United States has

a colorable claim to the western submerged riverbed such that the action is within the "Indian lands" exception to the government's waiver of sovereign immunity;[1] and because Fidelity's suit is barred by the QTA's twelve-year statute of limitations, 28 U.S.C. § 2409a(g). We conclude that Fidelity's predecessor in interest knew, or should have known, of the claim of the United States no later than 1926, when an Act of Congress recognized the "middle channel of the Tongue River" as the eastern boundary of the Northern Cheyenne Reservation. Accordingly, the statute of limitations had expired by the time Fidelity filed suit in 2004. We affirm on this basis, without addressing the "Indian lands" exception.

## I

The Northern Cheyenne Reservation was established within the Montana Territory by Executive Order of President Chester Arthur on November 26, 1884. The original eastern boundary of the Reservation was roughly 12 miles east of the Rosebud River and 10 miles west of the Tongue River. The reservation soon proved to be too small, and tensions developed between Cheyenne Indians living to the east of the reservation and white settlers moving into the territory. In 1886, the Secretary of the Interior withdrew sufficient lands on the Rosebud and Tongue Rivers for Indian homesteads, and ordered that unoccupied lands on both banks of the Tongue not be located or filed until the Reservation's needs were determined. This action was reported to Congress in 1887. House Ex. Doc. No. 1, Pt. 5 at 229, 50th Cong., 1st Sess. (1887), Vol. 2.

Montana joined the Union in 1889. By virtue of the Enabling Act of Feb. 22, 1889, 25 Stat. 676, it did so "on an

---

[1]The QTA waives the government's sovereign immunity for "a civil action . . . to adjudicate a disputed title to real property in which the United States claims an interest," but excepts "trust or restricted Indian lands." 28 U.S.C. § 2409a.

equal footing with the original States . . . ." *Id.* at 679. Accordingly, Montana along with all new states held title to the land that lay under navigable waters at the time of statehood; this title could, however, be defeated by a "prestatehood conveyance of the land to a private party for a public purpose appropriate to the Territory[,]" *Utah Div. Of State Lands v. United States*, 482 U.S. 193, 197 (1987), or by a reservation of submerged lands to keep them "under federal control for an appropriate public purpose," *United States v. Alaska*, 521 U.S. 1, 33-34 (1997).

In 1891, Congress established a Commission to investigate Northern Cheyenne boundary issues. The Commission recommended that the Reservation's eastern boundary be fixed at "the west meandering line of the Tongue River." The next year the Department of the Interior proposed a bill to expand the Reservation to the east side of the Tongue, but it didn't pass. Another effort to adjust boundaries was made in 1898; it resulted in a recommendation by U.S. Indian Inspector James McLaughlin, reported to Congress and adopted in a March 19, 1900 Executive Order by President William McKinley, that set the Reservation's boundary "in the middle of the channel of Tongue River." Finally, Congress confirmed the Executive Order in the Northern Cheyenne Allotment Act of 1926, 44 Stat. 690. The Act states:

> That the Northern Cheyenne Indian Reservation heretofore set apart by Executive order dated the 19th day of March, 1900, for the permanent use and occupation of the Northern Cheyenne Indians, in Montana, be, and the same is hereby, declared to be the property of said Indians, subject to such control and management of said property as the Congress of the United States may direct.
>
> . . .

> That the timber, coal or other minerals, including oil, gas, and other natural deposits, on said reservation are hereby reserved for the benefit of the tribe.

*Id.* §§ 1, 3.

In 2002, Fidelity Exploration and Production Co. obtained from the State of Montana seven oil and gas leases in a five-mile stretch of the Tongue riverbed, "subject to any incursion by the Northern Cheyenne Reservation." The lease area's five-mile stretch overlaps with the 26-mile stretch where the Reservation is bounded by the middle channel of the Tongue River pursuant to President McKinley's Executive Order and the 1926 Act. On July 27, 2004, Fidelity filed a complaint in the district court for the District of Montana against the United States and related parties, seeking to quiet title to the overlapping area of the riverbed.

The government moved to dismiss for lack of subject matter jurisdiction, lack of third party standing, and failure to join an indispensable party.[2] The district court concluded that Fidelity's action is time-barred, and that the action falls within the "Indian lands" exception to waiver of sovereign immunity.

Fidelity timely appeals both rulings, but as each is jurisdictional, and we conclude that the action is time-barred, we do not reach other issues raised by either party.

## II

[1] The QTA statute of limitations provides as follows:

> Any civil action under this section, except for an action brought by a State, shall be barred unless it is

---

[2]The State of Montana moved to intervene but later withdraw its request.

commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

28 U.S.C. § 2409a(g). The Supreme Court has held that this limitations period is "a central condition of the consent given by the Act." *United States v. Mottaz*, 476 U.S. 834, 843 (1986). It is therefore subject to the rule that "when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied." *Block v. North Dakota*, 461 U.S. 273, 287 (1983). Although a court "should not construe such a time-bar provision unduly restrictively," it must "be careful not to interpret it in a manner that would extend the waiver beyond that which Congress intended." *Id.* (internal quotation marks and citation omitted).

**[2]** Fidelity first submits that *Block* is no longer good law given the Court's later decision in *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990), that equitable tolling may apply to suits against the government. Fidelity points out that we have interpreted *Irwin* as indicating that "federal statutory time limitations on suits against the government are not jurisdictional in nature." *Washington v. Garrett*, 10 F.3d 1421, 1437 (9th Cir. 1993). However, *Irwin* never purported to overrule *Block*. *Compare Irwin*, 498 U.S. at 95, *with Block*, 461 U.S. at 292. And we must follow the Supreme Court precedent that directly controls, leaving to the Court the prerogative of overruling its own prior decisions. *Rodriquez de Quijas v. Shearson/American Exp., Inc.*, 490 U.S.477, 484 (1989). Accordingly, as our court has continued to do, we treat the statute of limitations in the QTA as jurisdictional. *See Skranak v. Castaneda*, 425 F.3d 1213, 1216 (9th Cir. 2005); *Adams v. United States*, 255 F.3d 787, 796 (9th Cir. 2001).

On the merits, Fidelity argues that the twelve-year clock should start when Fidelity knew of *its own* claim, not when Montana — its predecessor in interest — knew of the United States' claim. Fidelity maintains that it makes no sense to hold that it stands in Montana's shoes with regard to notice, but not with regard to the period of limitations. In particular, it suggests that doing so would reduce the marketability of the State's property interest and thereby devalue it. However, Fidelity's position, and the policy arguments that it offers in support, are inconsistent with the plain text of the statute.

**[3]** Section 2409a(g) specifically exempts "an action brought by *a State*" from the limitations period. 28 U.S.C. § 2409a(g) (emphasis added). This language does not encompass an action brought by a State's successor in interest, such as Fidelity's action here. *See California v. Yuba Goldfields, Inc.*, 752 F.2d 393, 396-97 (9th Cir. 1985) ("[W]e rely on the precise wording of the [QTA]'s text to determine when a cause of action accrues."). In contrast, according to the statute's notice provision, "[a]ny civil action under this section . . . shall be deemed to have accrued on the date the plaintiff *or his predecessor in interest* knew or should have known of the claim of the United States." 28 U.S.C. § 2409a(g) (emphasis added). This language makes it clear that Fidelity's action must be deemed to have accrued on the date that Montana — Fidelity's "predecessor in interest" — knew or should have known of the claim of the United States. Fidelity does not dispute that Montana knew or should have known of the United States' claim to the western Tongue River bed at least as of 1926 when the Northern Cheyenne Allotment Act of 1926 was enacted. Consequently, the statute of limitations on Fidelity's claim has long since expired. *Cf. Saylor v. United States*, 315 F.3d 664, 670 (6th Cir. 2003) (rejecting the argument that the plaintiff's statute of limitations should start to run from the date the plaintiff became aware of its claim). This being so, its action was properly dismissed.

AFFIRMED.