**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 3, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

STATE OF UTAH, on behalf of the Utah
Department of Environmental Quality,
Division of Air Quality,

        Petitioner,

    v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, and GINA
McCARTHY, Administrator, United
Stated Environmental Protection Agency,

        Respondents.

--------------------

UTAH ASSOCIATED MUNICIPAL
POWER SYSTEM,

        Intervenor.

No. 13-9535

PACIFICORP,

        Petitioner,
    v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, and GINA
McCARTHY, Administrator, United
States Environmental Protection Agency,

        Respondents.

No. 13-9536

--------------------

UTAH ASSOCIATED MUNICIPAL
POWER SYSTEM, STATE OF UTAH,
DEPARTMENT OF
ENVIRONMENTAL QUALITY AND
DIVISION OF AIR QUALITY,

      Intervenors.

---

**OPINION DENYING PANEL REHEARING**

---

Before **BACHARACH**, **SEYMOUR**, and **MURPHY**, Circuit Judges.

---

**BACHARACH**, Circuit Judge.

In a previous opinion, we dismissed Utah and PacifiCorp's petitions for review based on a lack of jurisdiction. We lack jurisdiction because Utah and PacifiCorp filed their petitions after the expiration of a jurisdictional deadline. The Petitioners apply for panel rehearing, and we deny the applications.

## I.    The Petitioners' Earlier Arguments & Our Panel Opinion

The Clean Air Act required Utah to submit a proposed implementation plan to the Environmental Protection Agency. Utah complied, but the EPA rejected parts of the plan. The State of Utah and other aggrieved parties could obtain judicial review under 42 U.S.C. § 7607(b)(1) by filing a petition within 60 days. *See* Clean Air Act, 42 U.S.C. § 7607(b)(1) (2012).

The State of Utah and PacifiCorp missed the deadline, prompting our court to order briefing on appellate jurisdiction in light of the 60-day deadline. Utah and PacifiCorp responded that the petitions were timely but never addressed the jurisdictional nature of the deadline.

We ultimately held that the petitions were untimely and that the defect was jurisdictional. Now, for the first time, Utah and PacifiCorp argue that the statutory deadline is not jurisdictional, complaining that the panel should have more fully explained its conclusion.

## II.    The Jurisdictional Nature of the 60-Day Deadline

With the benefit of the parties' newly presented arguments, we revisit whether the statutory deadline is jurisdictional. Ultimately, however, we adhere to the conclusion stated in the panel opinion: The deadline in § 7607(b)(1) is jurisdictional.

Filing deadlines can be jurisdictional or non-jurisdictional. To decide which deadlines are jurisdictional, we apply a "bright-line" rule. *See Sebelius v. Auburn Reg'l Med. Ctr.*, __ U.S. __, 133 S. Ct. 817, 824 (2013).

This rule focuses on Congress's stated intention. *Id.* When Congress clearly states that a deadline is jurisdictional, we regard it as jurisdictional. *Id.* To make its intention "clear," however, Congress need not use any particular words. *Id.* Thus, when we determine whether Congress has spoken clearly, we focus on the legal character of the deadline, as shown through its text, context, and historical treatment. *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010) ("[T]he jurisdictional analysis must focus on the 'legal character' of the requirement, which we discerned [in *Zipes v. Trans World*

3

*Airlines, Inc.*, 455 U.S. 385, 395 (1982)] by looking to the condition's text, context, and relevant historical treatment." (citation omitted)).

Following this framework, we focus on § 7607(b)(1)'s text, context, and historical treatment to determine whether the 60-day deadline is jurisdictional.

We first look to the statutory text. "[A] statutory restriction need not go so far as to use the magic word 'jurisdiction,' but must use 'clear jurisdictional language.'" *United States v. McGauhy*, 670 F.3d 1149, 1156 (10th Cir. 2012) (quoting *Gonzalez v. Thaler*, ___ U.S. ___, 132 S. Ct. 641, 649 (2012)).

In § 7607(b)(1), Congress used jurisdictional terminology: "shall" and "petition for review." Clean Air Act, 42 U.S.C. § 7607(b)(1) (2012); *see Sebelius v. Auburn Reg'l Med. Ctr.*, __ U.S. __, 133 S. Ct. 817, 825-26 (2013) (stating that the words "shall" and "notice of appeal" carry "jurisdictional import" in connection with the statutory deadline for appeals from district courts). Congress used this terminology because it regarded the 60-day deadline as jurisdictional.

In 1970, Congress amended the Clean Air Act to impose a 30-day deadline for citizen suits. Clean Air Act, 42 U.S.C. § 1857h-5(b)(1) (1970). In amending the statute, Congress recognized that if a petition was filed after 30 days, the court could consider the matter only if "significant new information [had] become available." S. Rep. No. 91-1196, pp. 65-66 (1970), *reprinted in* U.S. Sen. Comm. on Pub. Works, *A Legislative History of the Clean Air Amendments of 1970* 465-66 (1974).

With this statutory amendment, courts characterized the 30-day deadline as jurisdictional. *E.g.*, *Nat'l Ass'n of Demolition Contractors, Inc. v. Costle*, 565 F.2d 748,

4

750 n.2 (D.C. Cir. 1977); *Sears, Roebuck & Co. v. EPA*, 543 F.2d 359, 361 (D.C. Cir. 1976) (per curiam); *Natural Res. Def. Council, Inc. v. EPA*, 483 F.2d 690, 692 n.1 (8th Cir. 1973).

One appeals court took a different approach when confronting a similar deadline in the Glass-Steagall Act, suggesting that claimants might be able to avoid the deadline if they had a legitimate excuse. *Inv. Co. Inst. v. Bd. of Governors*, 551 F.2d 1270, 1281-82 (D.C. Cir. 1977) (dicta). This language alarmed many in Congress, who hoped to dispel any notion that the Clean Air Act's deadline could be avoided if the claimant had an "excuse." Thus, the House Committee on Interstate and Foreign Commerce explained its concern over this court decision and emphasized the inflexible nature of the statutory deadline in the Clean Air Act: "What is of concern to the committee is the possible application of dictum in that case [*Investment Company Institute v. Board of Governors*] to the Clean Air Act. The dictum which is of concern states that, with an undefined legitimate excuse, the statutory deadline (and the underlying policies of expedition and finality) may be circumvented." H.R. Rep. No. 95-294, at 322 (1977), *reprinted in* 4 U.S. Sen. Comm. on Env't & Pub. Works, *A Legislative History of the Clean Air Act Amendments of 1977* 2789 (1979).

Notwithstanding this concern, Congress lengthened the deadline (from 30 days to 60 days) in the Clean Air Act. Pub. L. No. 95-95, 91 Stat. 685, 776 (1997). Though Congress lengthened the period for suit, the House Committee on Interstate and Foreign Commerce stressed the jurisdictional nature of the new 60-day deadline:

> In extending to 60 days the time within which a party may file a petition for review of certain EPA actions, the committee wishes to reaffirm its intent to strictly limit section 307 challenges to those which are actually filed within that time. The only instance in which the committee intends that later challenges may be entertained by the court of appeals are those in which the grounds arise solely after the 60th day. Thus, unless a petitioner can show that the basis for his challenge did not exist or was not reasonably to be anticipated before the expiration of 60 days, *the court of appeals is without jurisdiction* to consider a petition filed later than 60 days after the publication of the promulgated rule.

H.R. Rep. No. 95-294, at 322 (1977) (emphasis added), *reprinted in* 4 U.S. Sen. Comm. on Env't & Pub. Works, *A Legislative History of the Clean Air Act Amendments of 1977* 2789 (1979). Thus, the statutory language reflects Congress's explicit recognition that the 60-day deadline is jurisdictional.

Like the statutory language, the context of § 7607(b)(1) supports the conclusion that it is jurisdictional. This section not only supplies a deadline but also serves as the jurisdictional basis for petitions like the ones here. *See Oklahoma v. EPA*, 723 F.3d 1201, 1204 (10th Cir. 2013) (stating that the court had jurisdiction under 42 U.S.C. § 7607(b)(1)); *La. Pub. Serv. Co. v. United States EPA*, 562 F.3d 1116, 1118 (10th Cir. 2009) (stating that jurisdiction existed under 42 U.S.C. § 7607(b)(1)); *see also Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 593 (1980) (stating that "Congress . . . vested the courts of appeals with jurisdiction under [42 U.S.C. § 7607(b)(1)]").[1]

Without § 7607(b)(1), we would lack jurisdiction because the federal government would have enjoyed sovereign immunity in suits against the EPA. *See Sierra Club v. Whitman*, 268 F.3d 898, 901 (9th Cir. 2001) ("Suits against the EPA, as against any

---

[1] In their opening briefs, PacifiCorp and Utah cited § 7607(b)(1) as a basis for jurisdiction. PacifiCorp's Opening Br. at 3; Utah's Opening Br. at 12.

agency of the United States, are barred by sovereign immunity, unless there has been a specific waiver of that immunity."); *see also FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (stating that sovereign immunity shields federal agencies from suit). Congress waived sovereign immunity through § 7607(b)(1). *See Royster-Clark Agribusiness, Inc. v. Johnson*, 391 F. Supp. 2d 21, 25-26 (D. D.C. 2005).

Though § 7607(b)(1) waives sovereign immunity, the waiver contains limitations, including the 60-day deadline. Through this deadline, § 7607(b)(1) serves a jurisdictional function by restricting the congressional waiver of sovereign immunity. *See Block v. North Dakota ex rel. Bd. of Univ. & School Lands*, 461 U.S. 273, 287 (1983) ("When waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity.").[2] This jurisdictional function suggests that the 60-day deadline is itself jurisdictional. *See Miller v. FDIC*, 738 F.3d 836, 845-46

---

[2]      In 1995, a Ninth Circuit panel questioned the continued viability of *Block*'s jurisdictional holding in light of a later Supreme Court decision, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990). *Fadem v. United States*, 52 F.3d 202, 205-06 (9th Cir. 1995), *vacated*, 520 U.S. 1101 (1997) (mem.), *reinstated*, 113 F.3d 167, 168 (9th Cir.), *withdrawn on other grounds*, 172 F.3d 648 (9th Cir. 1999). But a later Ninth Circuit panel acknowledged that *Block* remains good law after the decision in *Irwin*. *Fidelity Exploration & Prod. Co. v. United States*, 506 F.3d 1182, 1186 (9th Cir. 2007).

7

(7th Cir. 2013); [3] *see also United States v. McGauhy*, 670 F.3d 1149, 1156 (10th Cir. 2012).[4]

We consider not only the text and context, but also the historical treatment of the provision. For example, filing deadlines have long been considered jurisdictional when they involve appeals to article III courts. *See United States v. McGauhy*, 670 F.3d at

---

[3]     In *Miller*, a statute generally stripped the courts of jurisdiction except as otherwise provided in the same statute. 738 F.3d at 844 (quoting 12 U.S.C. § 1821(d)(13)(D)). The statute provided that claimants could sue over claims disallowed by the FDIC. *See id.* (citing 12 U.S.C. § 1821(d)(6)(A)). But this statutory grant of jurisdiction required claimants to sue within 60 days. *See id.* (quoting 12 U.S.C. § 1821(d)(6)(A)).

The court considered the context of this statutory scheme to determine whether the 60-day deadline was jurisdictional. The appeals court regarded the deadline as jurisdictional because it qualified the conferral of jurisdiction to the court. *Id.* at 846. Based on the statutory context, the court explained:

> Both the language and structure of the statutory text clearly indicate that the 60-day limitations period is a jurisdictional prerequisite. The interplay between . . . the general jurisdiction-stripping provision, and . . . the specific provision conferring jurisdiction over certain claims, is clear enough: No court has jurisdiction to entertain actions asserting claims against failed banks unless a provision in [the statute] expressly provides for it, and [the statute] expressly confers federal jurisdiction over claims . . ., but only when the claimant files suit within the 60-day limitations period. By operation of the general jurisdictional bar and the carefully delimited language of the exception, [the statute's] 60-day time limit has jurisdictional effect.

*Id.* at 845.

[4]     In *McGauhy*, we concluded that a 14-day deadline in Fed. R. Crim. P. 35 was jurisdictional. 670 F.3d at 1158. In reaching this conclusion, we stated: "Contextually, the placement of a restriction within a statute is important. If the restriction is connected to a grant of jurisdiction, then the restriction is likely meant to qualify that grant; but if the restriction is 'set off' from the grant of jurisdiction, it may be non-jurisdictional." *Id.* at 1156.

1156 ("Historically, certain types of restrictions have long been held to be jurisdictional—the epitome of these are time restrictions for taking an appeal."); *see also Bowles v. Russell*, 551 U.S. 205, 209 n.2 (2007) ("[I]t is indisputable that time limits for filing a notice of appeal have been treated as jurisdictional in American law for well over a century."). Section 7607(b)(1), governing appeals to article III courts, illustrates the type of deadline long considered jurisdictional.

The Petitioners suggest that the Supreme Court has overhauled this history by holding that filing deadlines were not jurisdictional in *Henderson v. Shinseki*, __ U.S. __, 131 S. Ct. 1197 (2011) and *Sebelius v. Auburn Regional Medical Center*, __ U.S. __, 133 S. Ct. 817 (2013). But PacifiCorp and Utah read too much into these cases.

*Auburn* involved a filing deadline in a statutory section allowing service providers to obtain a hearing in the Provider Reimbursement Review Board. Social Security Act, 42 U.S.C. § 1395oo(a)(3) (2006), cited in *Auburn Reg'l Med. Ctr.*, 133 S. Ct. at 822. *Henderson* involved a deadline for appeals to the Court of Appeals for Veteran Claims. Veterans' Judicial Review Act, 38 U.S.C. § 7266(a) (2006), cited in *Henderson*, 131 S. Ct. at 1204.

*Auburn* and *Henderson* provide us with a framework for deciding whether a deadline is jurisdictional. Thus, based on *Henderson* and *Auburn*, we examine the text, context, and historical treatment to determine whether a particular deadline is jurisdictional. *See Auburn Reg'l Med. Ctr.*, 133 S. Ct. at 824; *Henderson*, 131 S. Ct. at 1204-05. But the outcome of that examination is not dictated by *Auburn* or *Henderson*

9

because those cases lacked the unique combination of textual, contextual, and historical attributes rendering our 60-day deadline jurisdictional.

We start with the statutory text, as the Supreme Court did in *Auburn* and *Henderson*. This factor differentiates *Auburn* because there, the statute lacked words carrying judicial import, a fact noted and relied upon the by the Supreme Court. *Auburn Reg'l Med. Ctr.*, 133 S. Ct. at 824.

In *Henderson*, the Supreme Court acknowledged that the statutory word "shall" does not necessarily signal congressional intent to make a deadline jurisdictional. *See Henderson*, 131 S. Ct. at 1205. But in that case, contextual considerations drove the decision in two ways that reveal key differences from our case.

First, in *Henderson*, the filing deadline was separated from the statutory language conferring jurisdiction. *See Henderson*, 131 S. Ct. at 1205 (relying in part on placement of the statutory language in a subchapter entitled "Procedure" rather than a separate subsection entitled "Organization and Jurisdiction"). In our case, however, the deadline appears in the same subsection containing the grant of jurisdiction (§ 7607(b)(1)).

Second, the issue in *Henderson* involved a deadline to appeal to an article I court, not an article III court—a fact noted and emphasized by the Supreme Court. *Henderson*, 131 S. Ct. at 1204-05; *see also United States v. McGauhy*, 670 F.3d 1149, 1156 n.5 (10th Cir. 2012) (noting that the *Henderson* Court ultimately "cabined the scope of its analysis to 'review by an Article I tribunal as part of a unique administrative scheme'").

The historical treatment of our 60-day deadline also differs from the historical treatment of the deadlines discussed in *Henderson* and *Auburn*. Our 60-day deadline

10

exists for appeals to an article III court, which was not the case in *Henderson* or *Auburn*. And in those cases, there was no suggestion of a long-standing practice of treating filing deadlines as jurisdictional in appeals to the Provider Reimbursement Review Board or the Court of Appeals for Veteran Claims. In contrast, courts have long regarded filing deadlines as jurisdictional when they involve appeals to article III courts. *See supra* pp. 8-9.

With these differences in the textual, contextual, and historical treatment of the filing deadlines in *Henderson* and *Auburn*, we characterize our deadline as jurisdictional even though the deadlines discussed in those cases were considered non-jurisdictional. Accordingly, we adhere to the conclusion stated in our panel opinion: The 60-day deadline in § 7607(b)(1) is jurisdictional, and we lack jurisdiction over the petitions because PacifiCorp and Utah filed their petitions late.

### III. The Petitioners' Other Arguments in the Petitions for Rehearing

In the petitions for rehearing, Utah and PacifiCorp raise five other arguments. The first three are new:

1. The EPA's extension of time bears a presumption of regularity (raised by the State of Utah).

2. The EPA changed the date of its initial "action" for purposes of 40 C.F.R. § 23.3 (raised by the State of Utah and PacifiCorp).

3. The second administrative publication was explicit (raised by PacifiCorp).

In addition, PacifiCorp renews two of its prior arguments:

1. The action is timely under the "reopener doctrine."

2. We should defer to the EPA's interpretation of its regulations.

11

We reject these arguments.

### A.    "Presumption of Regularity"

Prior to its petition for rehearing, Utah relied on the fact that the EPA had told the parties they could file petitions for review by March 25, 2013.  The panel acknowledged the EPA's statement, but concluded that it had not legally changed the deadline.

Utah argues that the EPA's reference to the deadline bears a presumption of regularity.  For the sake of argument, we can assume that Utah is correct, for we have never questioned the validity of the administrative enactment in which the EPA identified the deadline.  Instead, we focused on the legal effect of that enactment.  Valid or not, it did not legally change the parties' deadline.  Thus, the newly asserted "presumption of regularity" would not affect the panel's earlier analysis.

### B.    The Term "Action" in 40 C.F.R. § 23.3

Utah and PacifiCorp have relied in part on 40 C.F.R. § 23.3.  Under this section, the EPA's "promulgation, approval, or action" is ordinarily considered filed when published in the Federal Register, but not when the EPA explicitly provides otherwise. 40 C.F.R. § 23.3.  In responding to the show-cause order, the Petitioners focused on the term "promulgation," arguing that the EPA had changed the date of its "promulgation." In the panel opinion, we rejected this argument, holding that the EPA had not "'explicitly' change[d] the promulgation date when it incorrectly identified the deadline as March 25, 2013." *Utah v. EPA*, 750 F.3d 1182, 1185 (10th Cir. 2014).

The Petitioners now rely on a different word in § 23.3—"action"—arguing that the EPA explicitly changed the date of its earlier "action" (rather than "promulgation"). The new argument is invalid for the same reasons discussed in the panel opinion.

Under the new argument, we would ask whether the EPA explicitly changed the date of the notice of its regulatory "action." *See* Clean Air Act, 42 U.S.C. § 7607(b)(1) (2012) (requiring the filing of a petition for review within 60 days of the date that the "notice of . . . promulgation, approval, or action appear[ed] in the Federal Register"). The EPA did not do that. The EPA incorrectly stated the deadline, but it did not explicitly change the date of the notice of its "action" in rejecting the Utah implementation plan. Thus, the Petitioners' new argument is invalid for the same reasons discussed in the panel opinion in connection with the "promulgation" date.

## C.    The "Explicit" Nature of the EPA's Action

PacifiCorp also argues that the EPA acted "explicitly" when it set the deadline for petitions for review.[5] For the sake of argument, we can assume that PacifiCorp is correct. But that was not the issue. The issue was whether the EPA had explicitly changed the notice date for its "promulgation."

Under the parties' new argument, the issue would be whether the EPA had explicitly changed the notice date for the agency's "action." In a sense, the EPA's statement of the deadline was "explicit." But the EPA did not explicitly change the

---

[5]    The State of Utah joins this argument.

13

notice date for its "promulgation" or "action." Thus, PacifiCorp's new argument would not render the petitions timely.

### D. Deference to the EPA and the Reopener Doctrine

The Petitioners earlier argued that: (1) we should defer to the EPA's interpretation of its regulations, and (2) the action would be timely under the "reopener doctrine." We analyzed and rejected both arguments in the panel opinion. *Utah v. EPA*, 750 F.3d 1182, 1185-86 (10th Cir. 2014). PacifiCorp renews both arguments in its petition for rehearing,[6] but fails to address the panel's rationale. We adhere to that rationale in rejecting PacifiCorp's renewal of these arguments.

## IV. Disposition

We deny the petitions for panel rehearing.

---

[6] Utah joins the argument involving deference to the EPA.

14