**NOT FOR PUBLICATION**
**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**FILED**

JUL 30 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ARLENE HEIN; ESTATE OF WILLIAM HEIN, | No. 17-35953 |
| Plaintiffs-Appellants, | D.C. No. 1:14-cv-00055-SPW |
| v. | MEMORANDUM* |
| UNITED STATES OF AMERICA; DEPARTMENT OF THE INTERIOR, | |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Montana
Susan P. Watters, District Judge, Presiding

Argued and Submitted May 17, 2019
Seattle, Washington

Before: KLEINFELD and FRIEDLAND, Circuit Judges, and PAULEY,** District Judge.

Arlene Hein and the Estate of William Hein (together, the "Heins") appeal

the district court's order granting summary judgment in favor of the United States

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable William H. Pauley III, United States District Judge for the Southern District of New York, sitting by designation.

and dismissing the Heins' claims for lack of subject matter jurisdiction. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

We review appeals of summary judgment de novo and "employ the same standard used by the trial court." *See Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 988 (9th Cir. 2016). "As required by that standard, we view the evidence in the light most favorable to the nonmoving party, determine whether there are any genuine issues of material fact, and decide whether the district court correctly applied the relevant substantive law." *Id.* at 989.

The Heins own several parcels of land in Montana bounded to the north by the Yellowstone River or abutting both sides of Arrow Creek (the "Lots"). A 1922 government survey used meander lines to mark where the Lots abutted the Yellowstone River and Arrow Creek. However, the Heins have no evidence that the meander lines surveyed in 1922 were coterminous with the ordinary high-water mark of the Yellowstone River or Arrow Creek. Nor have they presented any evidence demonstrating that their ownership rights are riparian. Indeed, the patents conveying the Lots do not state whether the boundaries of the Lots extended to the high-water mark of the Yellowstone River or Arrow Creek.

On April 29, 2014, the Heins brought this action under the Quiet Title Act, 28 U.S.C. § 2409a (the "QTA"), against the United States to quiet title to: (1) land

2                                                                                                    17-35953

abutting the Lots between the high-water mark and the low-water mark of the Yellowstone River; (2) land formed by accretion between the meander lines of the Lots and the current high-water mark of the Yellowstone River; and (3) land formed by the reliction of Arrow Creek.

"The running of the twelve-year limitations period deprives the federal courts of 'jurisdiction to inquire into the merits' of an action brought under the QTA." *See Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195–96 (9th Cir. 2008) (quoting *Block v. North Dakota*, 461 U.S. 273, 292 (1983)). QTA "action[s] shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States." 28 U.S.C. § 2409a(g).

To determine whether a party "knew or should have known" of the Government's adverse claims to its land, courts must determine whether the Government's "actions would have alerted a reasonable landowner that the [G]overnment claimed an interest in the land." *Shultz v. Dep't of Army*, 886 F.2d 1157, 1160 (9th Cir. 1989). "It is irrelevant whether the United States's [claims] . . . were meritorious; the QTA limitations period accrues as soon as the United States makes a claim that creates even a cloud on a plaintiff's ownership interest." *Kingman*, 541 F.3d at 1198 (quotation marks omitted).

The Heins' claims for land between the high- and low-water marks of the

Yellowstone River are time-barred because, at the latest in 1958, the United States asserted an adverse claim to the riverbed of the Yellowstone River through various acts of Congress. *See* Act of May 19, 1958, Pub. L. No. 85-420, 72 Stat. 121 (1958) (restoring "tribal ownership of all vacant and undisposed-of ceded lands" to the Crow Tribe, with a northern boundary of the midchannel of the Yellowstone River); Act of Aug. 14, 1958, Pub. L. No. 85-628, 72 Stat. 575 (1958) (repurchasing land from the Crow Tribe with a northern boundary of the midchannel of the Yellowstone River). By claiming the riverbed, the Government clouded the Heins' title to land between the high- and low-water marks, which could only belong to the Heins if Montana, rather than the United States, owned the riverbed. *See Fid. Expl. & Prod. Co. v. United States*, 506 F.3d 1182, 1184–86 (9th Cir. 2007) (holding that an act of Congress setting a boundary at the "middle of the channel of" a river was sufficient to put a claimant on notice that the Government had an adverse claim to the riverbed); *see also Montana v. United States*, 450 U.S. 544, 551 (1981) (explaining the general rule that riparian owners only own up to the high-water mark); *Mont. Power Co. v. Rochester*, 127 F.2d 189, 192 (9th Cir. 1942) ("The general rule, of course, is that patents of the United States to lands bordering navigable waters, in the absence of special circumstances, convey only to high water mark.").

The Heins' claims for accreted land between the meander lines and the

4                                                          17-35953

current high-water mark of the Yellowstone River and land formed by the reliction of Arrow Creek are time-barred as well. Specifically, to state a claim for accreted or relicted land, the Heins would had to have been riparian owners. *See United States v. Milner*, 583 F.3d 1174, 1187 (9th Cir. 2009) ("[T]he [riparian] property owner gains when land is gradually added through accretion, the accumulation of deposits, or reliction, the exposure of previously submerged land."). Because the Heins offered nothing on summary judgment demonstrating that their Lots extend beyond the meander lines, there is no evidence that such land was ever conveyed. And because the 1958 acts of Congress restored tribal ownership to the Crow Tribe and then repurchased for the United States "all vacant and undisposed-of ceded lands" south of the midchannel of the Yellowstone River, the Heins were on notice that the Government had an adverse claim to the land in dispute. 72 Stat. at 121; 72 Stat. at 575; *see Kingman*, 541 F.3d at 1198.

For these reasons, the district court properly granted summary judgment in the Government's favor and dismissed the Heins' QTA action.

**AFFIRMED.**

17-35953