*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0239p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

HEATHER DAILE ELLISON, personal representative of
the Estate of Brian Keith Gill, deceased,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

No. 07-2068

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 07-11213—Avern Cohn, District Judge.

Submitted: May 1, 2008

Decided and Filed: July 2, 2008

Before: BATCHELDER, SUTTON, and FRIEDMAN, Circuit Judges.[*]

_____

**COUNSEL**

_____

**ON BRIEF:** Robert Wetzel, CZERYBA & GODFROY, P.C., Monroe, Michigan, for Appellant. Geneva S. Halliday, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

_____

**OPINION**

_____

SUTTON, Circuit Judge. Heather Ellison asks us to reinstate her tort claim against the United States under the Federal Tort Claims Act. Because she filed this lawsuit almost seven months after the Postal Service denied her claim, because the Act requires claimants to file their claims within six months of the agency's written denial of the claim and because her alternative readings of the Act are unconvincing, we affirm.

---

[*]The Honorable Daniel M. Friedman, Senior Circuit Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

I.

On April 4, 2005, Brian Gill was driving his motorcycle north on Hull Road in Monroe County, Michigan, as Linda McEachern, a United States Postal Service employee, approached from the south in her sport utility vehicle. Their vehicles unfortunately collided, and Gill died from his resulting injuries.

On September 7, 2005, Heather Ellison filed an administrative tort claim with the Postal Service on behalf of Gill's estate, alleging that McEachern made an illegal U-turn without yielding to Gill and seeking $5 million in wrongful-death damages. On August 22, 2006, the Postal Service sent Ellison's attorney a letter denying her claim, and a return receipt shows that Ellison's attorney received the letter on August 25. The letter informed her that, "if dissatisfied with the Postal Service's final denial[,] . . . a claimant may file suit in a United States District Court no later than six (6) months after the date the Postal Service *mails* the notice of that final action." JA 32. For reasons that the record does not disclose, Ellison did not file this complaint until seven months later, on March 21, 2007. The Postal Service filed a motion to dismiss the complaint on timeliness grounds, and the district court granted the motion.

II.

"The United States, as sovereign, is immune from suit save as it consents to be sued . . . ." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). The Federal Tort Claims Act provides a limited waiver of the national government's immunity from suit for torts committed by federal employees and places several conditions on the waiver.

The Act, first of all, requires claimants to give government agencies an initial opportunity to resolve claims: "An action shall not be instituted upon a claim . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing." 28 U.S.C. § 2675(a). While the Act gives the government the first opportunity to assess a claim, it does not make the claimant wait indefinitely for the agency to resolve it: "The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." *Id.* Besides telling claimants where and how they should file their claims, the Act also tells claimants when they must file their claims: "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues *or* unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." *Id.* § 2401(b) (emphasis added).

At stake in this case is whether the last provision, a statute of limitations, bars Ellison's claim—and, more specifically, whether the italicized "or" means that the statute sets forth two different ways of barring an action on limitations grounds or two different ways of satisfying the limitations requirement. As we read the provision, it covers claims that fail to satisfy either one of two deadlines—those claims not filed with the agency within two years of their accrual date or those claims not filed within six months of the agency's denial of the claim. And because Ellison failed to comply with the last of these conditions, filing this lawsuit almost seven months "after the date of mailing . . . of notice of final denial," the statute bars her claim. *See Thompson v. United States*, 8 F. App'x 547, 548 (6th Cir. May 4, 2001) (holding that the Act barred a lawsuit filed more than six months after the agency rejected the claim).

Context provides considerable support for this reading. Claimants, remember, *must* present their claims to the relevant agency before bringing suit in federal court. *See* 28 U.S.C. § 2675(a). And if we construe the Act's time bar to mean that the claimant must fail to satisfy both deadlines,

that would pull at least two threads out of a coherent reading of the provisions. For one, a claimant cannot receive a notice of denial—the trigger for the six-month limitations rule—until she has filed an administrative claim. The statute thus plainly contemplates that one act (the administrative filing) will precede the other (court filing) and thus most naturally requires claimants to satisfy both deadlines.

For another, the alternative would effectively eliminate *any* court deadline. It would mean that (1) claimants could wait as long as they wished before presenting tort claims to agencies as long as they filed the claim within six months of any denial or (2) they could present their claims to agencies within two years of accrual and then wait as long as they wished to file suit in district court. But no one doubts that Congress meant to impose *some* time limitation on administrative and court filings, and, if we left the Act without a meaningful time limitation, we would be "tak[ing] it upon ourselves to extend the waiver [of sovereign immunity] beyond that which Congress intended." *United States v. Kubrick*, 444 U.S. 111, 117–18 (1979).

We have considerable company in reaching this result. Three circuits have explicitly considered and rejected Ellison's argument that claimants must meet just one of the two deadlines—either the administrative or the court one. *See Willis v. United States*, 719 F.2d 608, 613 (2d Cir. 1983); *Schuler v. United States*, 628 F.2d 199, 201 (D.C. Cir. 1980) (en banc) (per curiam); *Houston v. U.S. Postal Serv.*, 823 F.2d 896, 902 (5th Cir. 1987). Our reading of the statute, moreover, draws support from the fact that all of the other circuits, including our own, have assumed without discussion that both deadlines must be met. *See Brockett v. Parks*, 48 F. App'x 539, 541 (6th Cir. Oct. 8, 2002) ("An FTCA tort claimant must present his claim in writing to the appropriate agency within two years of the date the claim accrued, and bring a civil action within six months after the agency mails the notice of final denial of the claim."); *Velez-Diaz v. United States*, 507 F.3d 717, 719 (1st Cir. 2007); *Gordon v. Pugh*, 235 F. App'x 51, 53 (3d Cir. May 31, 2007); *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986); *McNeil v. United States*, 964 F.2d 647, 648 (7th Cir. 1992); *Slaaten v. United States*, 990 F.2d 1038, 1041 (8th Cir. 1993); *Dyniewicz v. United States*, 742 F.2d 484, 485 (9th Cir. 1984); *In re Franklin Sav. Corp.*, 385 F.3d 1279, 1287 (10th Cir. 2004); *Phillips v. United States*, 260 F.3d 1316, 1317 (11th Cir. 2001).

Ellison's principal response is to say that § 2401 is "disjunctive," Br. at 17, "allow[ing] a claimant to proceed . . . by *either* presenting the claim to an agency within two years of accrual *or* by filing a legal action with[in] six months of a final denial," Br. at 9. No doubt that is one way to read the provision, and we credit Ellison's effort to focus on the text at hand. But the fact that the statute uses the disjunctive does not by itself tell us anything. The question remains whether the statute sets forth alternative ways of barring a claim or alternative ways of preserving a claim. A statute that precludes an action if the claimant (disjunctively) fails to meet either of two requirements generally will come to the same end as a statute that requires the claimant (conjunctively) to fulfill both requirements. In barring an action if the claimant fails to meet the agency-filing deadline (because it is not "presented in writing to the appropriate Federal agency within two years after such claim accrues") "or" if the claimant fails to meet the court-filing deadline (because it is not "begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented"), the statute bars claims that fail to meet either deadline. And because Ellison failed to meet the second deadline, that dooms the action.

Nor, for similar reasons, is Ellison correct that this reading of the statute transforms "or" into "and." While we will not pretend that the statute is a model of draftsmanship, the use of "or" together with the statutory imperative that actions be filed in a specific order signals that there are two different ways to file a claim late—by waiting more than two years to file a claim with the agency or, having filed that claim, waiting more than six months to file a claim with the court—not two conjunctive requirements for filing a claim late. Had Congress used "and" in writing this statute

(or had we adopted "and" in construing it), that would mean that a claim would be barred only if the plaintiff filed the action late in the agency *and* filed the action late in court. That is not a traditional way to formulate a limitations rule.

Ellison independently argues that, after the agency failed to deny her claim within six months, § 2675(a) gave her the "freedom to choose when to deem the claim denied" and "complete discretion on the timing of [her] decision to file suit." Br. at 15. When an agency fails "to make final disposition of a claim within six months," it is true, the statute gives the claimant the option "any time thereafter, [to] deem [that inaction] a final denial of the claim." 28 U.S.C. § 2675(a). But the option to "deem" a claim constructively denied evaporates once the agency actually denies the claim. There is nothing to deem once the agency formally acts. *See* Webster's Third New International Dictionary 589 (2002) (defining "deem" as "to come to view, judge, or classify after some reflection").

But even if a claimant somehow could deem a claim constructively denied "any time []after" six months of agency dormancy (notwithstanding later agency action), that power would trigger only a claimant's option to *initiate* a claim and would have no bearing on when the Act bars the filing of a claim. Section 2675(a) allows a party to deem a claim constructively denied only "for the purposes of [that] section," a section that determines nothing more than when a claim may "be instituted" in the district court. In a different section, the Act "forever bar[s]" a court claim "unless action is begun within six months after . . . notice of final denial of the claim by the agency." 28 U.S.C. § 2401(b). Nothing in the Act suggests, much less says, that a claimant can sidestep that time bar simply by deeming her claim denied later than the agency in truth did deny it.

Our reading of these provisions—that federal tort claimants *may* initiate suit in federal court at any point after six-month agency inaction with the proviso that they *must* file within six months of agency denial—is consistent with the reasoning and outcome of the only court of appeals to address this question squarely. *See Anderson v. United States*, 803 F.2d 1520, 1522 (9th Cir. 1986) (rejecting an argument that "federal agencies are allowed . . . only six months to act on a claim"). And it is consistent with the reasoning of our decision in *Conn v. United States*, 867 F.2d 916 (6th Cir. 1989), which addressed the interplay between § 2675(a) and § 2401(b) and which rejected the argument that, in the absence of a written agency denial, a claimant must file suit in the district court within a reasonable time, *see id.* at 920–21; *see also Pascale v. United States*, 998 F.2d 186, 189 (3d Cir. 1993) (same).

Attempting to draw support from these last two cases, in which the courts ruled for the claimants, Ellison argues that the "six-month statute of limitations in section 2401(b)" does not apply "when a claimant has exercised the deeming option under section 2675(a)." *Pascale*, 998 F.2d at 189. But in these two cases the agencies *never* mailed the claimants a written final denial, and both cases indicate "that the agency can start the section 2401(b) clock running at any time by mailing a final denial of the claim." *Id.* at 192; *see also id.* at 188–89 (holding that § 2401(b) and § 2675(a) act independently of one another); *Arigo v. United States*, 980 F.2d 1159, 1161 (8th Cir. 1992) (noting that after the six-month response period has lapsed "the agency can still consider the claim and trigger § 2401(b)'s six-month limitations period by denying the claim"); *cf. Conn*, 867 F.2d at 921. When the Postal Service mailed its denial of Ellison's claim, it triggered the six-month countdown, and, because Ellison did not file her lawsuit before that window closed, the Act bars her claim.

III.

For these reasons, we affirm.