**FILED**
United States Court of Appeals
Tenth Circuit

**January 21, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

LARRY WAYNE BARNES, SR.;
LINDA SUE BARNES,

          Plaintiffs - Appellants,

v.

UNITED STATES OF AMERICA;
JOHN DOE, sued as: John Does 1–30,
unknown individuals of the Tulsa
Police Department and/or BATF and
John Does 31–40, unknown
supervisors and/or policy makers for
the Tulsa Police Department and/or
BATF,

          Defendants - Appellees.

No. 13-5014

---

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:12-CV-00469-HE-PJC)**

---

Art Fleak, Tulsa, OK (J. Derek Ingle, E. Terrill Corley & Associates, Tulsa, OK,
and E. Anthony Mareshie, E. Anthony Mareshie, P.L.L.C., Tulsa, OK, with him
on the briefs), for Plaintiffs-Appellants.

Zakary Toomey, Civil Division, U.S. Department of Justice, Washington, D.C.
(Stuart F. Delery, James G. Touhey, Jr., and Lawrence Eiser, Civil Division, U.S.
Department of Justice, Washington, D.C., with him on the brief), for Defendants-
Appellees.

---

Before **KELLY**, **GORSUCH**, and **HOLMES**, Circuit Judges.

**HOLMES**, Circuit Judge.

Larry and Linda Barnes appeal from the dismissal of their Federal Tort Claims Act ("FTCA") suit.  The district court dismissed the case for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), based on its finding that the Barneses' claims were time-barred under the six-month statute of limitations in 28 U.S.C. § 2401(b).  The Barneses now seek reversal of this order, arguing that the district court misinterpreted the statute of limitations and further erred by failing to afford the Barneses the benefit of the doctrines of relation back, equitable tolling, and equitable estoppel.  Exercising jurisdiction under 28 U.S.C. § 1291, we **affirm**.

**I**

In August 2007, a federal grand jury of the United States District Court for the Northern District of Oklahoma returned a two-count indictment against Larry Barnes, charging him with crimes relating to the possession and distribution of methamphetamine.[1]  After a three-day trial, a jury convicted Mr. Barnes on both

---

[1]  In describing the factual background to this case, we rely in part on the records from Mr. Barnes's earlier criminal and civil cases, of which we take judicial notice.  *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("[W]e may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand."); *St. Louis Baptist Temple, Inc. v.*

(continued...)

2

counts, and Mr. Barnes was sentenced to sixty-six months' incarceration on each count, to run concurrently, as well as a lengthy period of supervised release.

While Mr. Barnes's direct appeal was pending, the government acquired evidence indicating that material testimony offered at trial by a Bureau of Alcohol, Tobacco, Firearms, and Explosives ("BATF") special agent, an officer of the Tulsa Police Department, and a confidential informant had been fabricated. The government responded to the newly acquired evidence by asking the court to vacate Mr. Barnes's conviction, to dismiss the indictment against him, and to release him from incarceration. On July 2, 2009, the district court entered an order effectuating this request and directed the Bureau of Prisons to immediately release Mr. Barnes.

Following his release, Mr. Barnes desired redress related to his prosecution and imprisonment. He and his wife, Linda Barnes, began the process of seeking it on May 20, 2010, by filing administrative tort claims with the BATF. About a year later, on May 13, 2011, the Barneses filed a civil lawsuit against the BATF in Oklahoma state court ("Lawsuit #1"), asserting various claims sounding in tort. The BATF removed this suit to the United States District Court for the Northern District of Oklahoma pursuant to 28 U.S.C. § 1442(a)(1), which permits "[t]he

---

[1](...continued)
*FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system . . . .").

United States or any agency thereof" to remove any "civil action or criminal prosecution" against it to federal district court.

On September 23, 2011, less than two weeks after removing the case to federal court, the BATF filed a motion to dismiss for lack of subject-matter jurisdiction. The agency's argument proceeded as follows: (1) because 28 U.S.C. § 1346(b) vests exclusive jurisdiction over FTCA suits in the federal district courts; and (2) removal jurisdiction under 28 U.S.C. § 1442(a) is derivative and cannot vest jurisdiction in a federal court where the state court had none; then (3) the state court and, perforce, the district court, lacked jurisdiction to hear the case.

On October 25, 2011, while the motion to dismiss Lawsuit #1 remained pending before the district court, the BATF provided notice via certified mail to the Barneses (through their counsel) of its formal denial of their administrative claims. In apparent contemplation of 28 U.S.C. § 2401(b)'s statute of limitations,[2] the BATF's notice expressly informed the Barneses of a deadline for filing any subsequent lawsuit: "If your clients are dissatisfied with this action, a lawsuit must be filed in an appropriate United States district court not later than

---

[2] The relevant statutory provision states, in pertinent part: "A tort claim against the United States shall be forever barred . . . unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b).

4

*six months* after the date of the mailing of this notification." Aplt. App. at 37

(Letter to J. Derek Ingle, Esq., from Eleaner R. Loos, Assoc. Chief Counsel,

Litig. Div., U.S. Dep't of Justice, dated Oct. 24, 2011) (emphasis added).

Approximately five months later, on March 23, 2012, the district court granted

the BATF's motion to dismiss Lawsuit #1 for lack of jurisdiction and dismissed

that case without prejudice.[3]

On August 22, 2012, the Barneses filed their second lawsuit ("Lawsuit

#2"), the action now before us on appeal. Notably, this action was filed

approximately five months after the district court dismissed Lawsuit #1 *and*

nearly ten months after the BATF gave the Barneses notice of its formal denial of

their administrative claims. More specifically, with regard to the BATF's formal

denial, the Barneses filed Lawsuit #2 nearly four months *after* the six-month

deadline (i.e., April 25, 2012) that the BATF communicated to the Barneses in the

formal denial.

The government filed a motion to dismiss Lawsuit #2 for lack of

jurisdiction under Federal Rule of Civil Procedure 12(b)(1). This time, the

government argued that the Barneses' claims were barred by the FTCA's statute

---

[3]    Although the Barneses' initial complaint had improperly named the
BATF as defendant instead of the United States, which the FTCA requires, *see
Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1142 (10th Cir. 1999), the
amended complaint in Lawsuit #1 remedied this defect so that the district court's
dismissal without prejudice regarded properly pleaded claims against the United
States.

of limitations, 28 U.S.C. § 2401(b), because by the time the Barneses filed Lawsuit #2, the statute's six-month limitations period had run.

The district court agreed, finding the Barneses' claims time-barred. It rejected the Barneses' arguments regarding the doctrines of relation back and equitable estoppel, finding these doctrines inapplicable under the pleaded facts. Finally, the court found that the Barneses' claims were not saved by equitable tolling, because "[t]he Tenth Circuit has repeatedly referred to the FTCA's timeliness requirement as being jurisdictional," and thus, the statutory limitations period was "not subject to equitable tolling." Aplt. App. at 102 (Order, filed Jan. 14, 2013).

Based on these conclusions, the district court granted the government's motion and dismissed the Barneses' claims with prejudice. The Barneses timely filed this appeal, and we now exercise jurisdiction pursuant to 28 U.S.C. § 1291.

## II

### A

First, we conclude that the district court soundly analyzed whether Lawsuit #2 was time-barred and properly determined that it was. Consequently, we find that the Barneses' action was properly dismissed as time-barred. *See Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . . ."); *accord Vasquez Arroyo v. Starks*, 589 F.3d 1091,

6

1096 (10th Cir. 2009).

<strong>1</strong>

In assessing the district court's ruling that Lawsuit #2 was barred by the statute of limitations, we turn first to the court's interpretation and application of the statute of limitations itself, which we review de novo. *See Braxton v. Zavaras*, 614 F.3d 1156, 1159 (10th Cir. 2010).

We start by observing that the FTCA has both an administrative-exhaustion requirement, set forth in 28 U.S.C. § 2675(a), and a statute of limitations, set forth in 28 U.S.C. § 2401(b). Combined, these provisions act as chronological bookends to an FTCA claim, marking both a date before which a claim may not be filed and a date after which any filing is untimely.

The Barneses conflate these two distinct features of the statutory scheme when they argue that compliance with the administrative-exhaustion requirement under § 2675(a)'s "deemed denial" provision effectively exempted them from § 2401(b)'s six-month limitations period. To the contrary (as the district court correctly found), the six-month limitations period in § 2401(b) is triggered by an agency's formal denial of a potential plaintiff's administrative claims— regardless of whether that plaintiff has filed a claim pursuant to § 2675(a)'s "deemed denial" provision.

The administrative-exhaustion requirement applicable to FTCA claims "bars claimants from bringing suit in federal court until they have exhausted their

7

administrative remedies." *McNeil v. United States*, 508 U.S. 106, 113 (1993).

Section 2675(a) provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). In other words, to meet the threshold requirement of administrative exhaustion, plaintiffs must either (1) have their administrative claims finally denied by the relevant federal agency; or (2) if the agency fails to act on their administrative claims within six months of presentment, they may thereafter deem the claims (constructively) denied.

If § 2675(a)'s exhaustion requirement establishes a date *before* which a claim cannot be filed, § 2401(b)'s limitations period establishes the date *after* which any claim is barred. Recall, this provision states: "A tort claim against the United States shall be forever barred unless . . . action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). The issue—one of first impression in this circuit—is simply how these two provisions

8

relate to one another.

To resolve this issue, we begin by looking at the statutory text. *See First Nat'l Bank of Durango v. Woods (In re Woods)*, 743 F.3d 689, 694 (10th Cir. 2014) (noting that statutory interpretation "must begin . . . with the language of the statute itself" (internal quotation marks omitted)). In doing so, our analysis is guided by the fact that, "[l]ike a waiver of [sovereign] immunity itself, which must be unequivocally expressed[,] [the Supreme] Court has long decided that limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Franklin Sav. Corp. v. United States (In re Franklin Sav. Corp.)*, 385 F.3d 1279, 1289–90 (10th Cir. 2004) (third and fourth alterations in original) (quoting *Lehman v. Nakshian*, 453 U.S. 156, 160–61 (1981)) (internal quotation marks omitted). We bear in mind, moreover, that "[s]tatutes of limitations . . . represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Id.* at 1291 (quoting *United States v. Kubrick*, 444 U.S. 111, 117 (1979)) (internal quotation marks omitted).

Turning to the text, we ask whether § 2401(b)'s six-month statute of limitations may operate to bar an FTCA claim that has been filed after exhaustion pursuant to the "deemed denial" provision of § 2675(a). More specifically, the

9

question is whether, notwithstanding a plaintiff's proper exercise of the option of deeming an administrative claim denied, an agency still retains the ability to issue a formal denial, thereby triggering § 2401(b)'s six-month statute of limitations and barring the plaintiff's claim, if tardy.

In textual terms, the Barneses' best argument relates to the use in both § 2401(b) and § 2675(a) of the phrase "final denial." They assert that because there can only be one "final denial," the use of this term in both provisions should be read to imply that what is "deemed a final denial of the claim" under § 2675(a) precludes a future "final denial of the claim" under § 2401(b). The fundamental problem with this reading is that it ignores the express language in § 2675(a) saying that an agency's failure to act on a claim may be deemed a final denial "for purposes of this section." That is, the plain language of the statute suggests that a deemed denial is final only for purposes of satisfying the exhaustion requirement, and not for other purposes, such as satisfying a limitations period in a *different* section of the statute. *See Lehman v. United States*, 154 F.3d 1010, 1014 (9th Cir. 1998) (noting that "a 'deemed' final denial under section 2675(a) has no effect beyond what is stated in *that* section"); *accord Ellison v. United States*, 531 F.3d 359, 363 (6th Cir. 2008).

Ignoring this limiting language would lead to a bizarre result. Generally, courts have concluded that § 2675(a) provides no independent limitation on when plaintiffs may file in federal court after deeming their administrative claims

10

denied.[4]  In other words, courts are virtually of one mind in ruling that (at least

until there has been a final denial by the relevant agency) there is no limit on

when a plaintiff may file a lawsuit predicated on a deemed denial.  *See, e.g.*,

*Ellison*, 531 F.3d at 363 (noting that the statute does not restrict when a claimant

can exercise the "option to 'deem' a claim constructively denied," though that

option "evaporates once the agency actually denies the claim"); *Pascale v. United

States*, 998 F.2d 186, 193 (3d Cir. 1993) ("[T]here is no limit . . . on a claimant's

time to deem the claim denied."); *Taumby v. United States*, 919 F.2d 69, 70 (8th

Cir. 1990) ("[T]here is no time limit for the filing of an FTCA action when an

administrative claim is deemed to be denied . . . ."); *cf. Anderson ex rel. Anderson

v. United States*, 803 F.2d 1520, 1522 (9th Cir. 1986) ("Six months after the

submission of the administrative claim, the claimant may either deem it denied

and file suit in district court at any time prior to final agency action or the

claimant may await final agency action and file suit within six months

thereafter.").

Consequently, if the statutory provisions were read to prevent agencies

from triggering § 2401(b)'s six-month limitations period through final denial of

---

[4]  Though we have not specifically addressed this issue, it is not contested here.  Thus, for purposes of this appeal, we will assume without deciding that, absent final agency action, plaintiffs ordinarily may deem their administrative claims denied and file suit at any time after the six-month period referred to in § 2675(a).

11

administrative FTCA claims after a "deemed denial," then plaintiffs would effectively have an indefinite statute of limitations for such claims. "[A] claimant theoretically could file an action, voluntarily dismiss it, and then re-file years later," *Lehman*, 154 F.3d at 1015, if this were true. Such an indefinite limitations period would be plainly contrary to § 2401(b)'s statutory objective of "requir[ing] the reasonably diligent presentation of tort claims against the government." *Plaza Speedway Inc. v. United States*, 311 F.3d 1262, 1266 (10th Cir. 2002) (quoting *Arvayo v. United States*, 766 F.2d 1416, 1418 (10th Cir. 1985)) (internal quotation marks omitted).

We reject the Barneses' implausible reading of § 2675(a) and § 2401(b) and instead adopt the position that these two provisions act independently of one another. In doing so, we join the Sixth Circuit in *Ellison* and the Ninth Circuit in *Lehman*. Particularly persuasive is *Lehman*, which addressed a scenario strikingly similar to the one before us. In that case, as in this one, the plaintiffs filed an administrative tort claim with an agency (there, the U.S. Postal Service), and after six months had elapsed, deemed the claim denied and filed a lawsuit. *See Lehman*, 154 F.3d at 1012. As in the present case, the agency mailed its final denial of the plaintiffs' claim while the plaintiffs' original lawsuit was still pending and, as in the present case, the lawsuit was subsequently dismissed without prejudice. *See id.*

As here, the *Lehman* plaintiffs subsequently refiled, but did so more than

12

six months after the final agency denial of their administrative claim, and the district court dismissed the second lawsuit as untimely under § 2401(b). *See* 154 F.3d at 1012–13. Affirming the *Lehman* district court, the Ninth Circuit explained:

> Neither section 2401(b) nor section 2675(a) nor any other provision of the FTCA contains anything to suggest that an agency's authority to issue a notice of final denial is terminated, or even temporarily suspended, when a claimant brings an action that is timely under section 2675(a). To the contrary, the wording of sections 2401(b) and 2675(a) suggests that they are functionally distinct. Section 2675(a) expressly states that a claim may be deemed denied only "for purposes of this section." Thus, a "deemed" final denial under section 2675(a) has no effect beyond what is stated in *that* section. . . .
>
> Further, our reading of the statutes [i.e., § 2401(b) and § 2675(a)] finds contextual support. Triggering the statute of limitations by an *actual* denial after a claim has been "deemed" denied serves an important function: It provides an agency with *certainty* that it will not be subject to an action to establish liability after a definite date. That function is particularly important under the FTCA, because the statute contains *no time limit* for commencing an action when an administrative claim has been deemed denied under section 2675(a), in the absence of an actual denial.

*Id.* at 1014–15.

In *Ellison*, which differed factually from this case in that the plaintiff there never filed a timely first action, the Sixth Circuit endorsed substantially the same reading of § 2675(a) and § 2401(b) as the Ninth Circuit:

> [E]ven if a claimant somehow could deem a claim constructively denied "any time [ ]after" six months of agency dormancy (notwithstanding later agency action), that power would trigger only a claimant's option to *initiate* a claim and would have no

13

> bearing on when the Act bars the filing of a claim. Section 2675(a) allows a party to deem a claim constructively denied only "for the purposes of [that] section," a section that determines nothing more than when a claim may "be instituted" in the district court. In a different section, the Act "forever bar[s]" a court claim "unless action is begun within six months after . . . notice of final denial of the claim by the agency." 28 U.S.C. § 2401(b).

531 F.3d at 363 (second, third, and fourth alterations in original) (omission in original).

Our own independent reading of the text of § 2675(a) and § 2401(b) comports with the analyses of this issue found in *Lehman* and *Ellison*. In a nutshell, § 2675(a) articulates an administrative-exhaustion requirement that dictates when a potential plaintiff's opportunity to initiate a claim begins; it has no bearing on the point at which that opportunity ceases. To the extent that § 2675(a) permits a party to "deem" an administrative claim denied, the statute makes clear that this constitutes a "final denial" *only* for purposes of determining whether the administrative-exhaustion requirement is satisfied, i.e., whether it is still too *early* to file a claim.

By contrast, § 2401(b) describes the time at which it is too *late* to file. The six-month window described by this provision opens only upon the "mailing . . . of notice of final denial of the claim *by the agency* to which it was presented." 28 U.S.C. § 2401(b) (emphasis added). Ordinarily, this means that, regardless of whether plaintiffs have already "deemed" their administrative claims

14

denied and commenced a suit against the government under the FTCA, a formal denial of those claims triggers the six-month limitations period described in § 2401(b).

**2**

Having clarified the operation of § 2401(b), it is a fairly straightforward matter to conclude that the Barneses' Lawsuit #2 was untimely. The Barneses filed their administrative claims on May 20, 2010. A year later, the agency had not yet acted on their claims, so the Barneses invoked § 2675(a), "deemed" their claims denied for purposes of exhaustion, and filed Lawsuit #1 on May 13, 2011. While Lawsuit #1 was still pending, the BATF formally denied the Barneses' claims, effective October 25, 2011, triggering the six-month statute of limitations period of § 2401(b), which would expire on April 25, 2012.

On March 23, 2012, the district court granted the government's pending motion to dismiss Lawsuit #1. Although the Barneses at this point had roughly a month remaining in which to refile within the statute of limitations, they did not do so. Instead, they waited until August 22, 2012, to file Lawsuit #2—*viz.*, nearly four months *after* the statute of limitations had run. It is plain from this chronology of events that the district court correctly ruled that, "absent some basis for avoiding the FTCA's limitations period, [the Barneses'] claims [in Lawsuit #2 were] time-barred." Aplt. App. at 100.

15

**3**

The Barneses disagree, arguing that Lawsuit #2 is actually timely because it relates back to Lawsuit #1 under Federal Rule of Civil Procedure 15(c). That is, under their view, the filing date of Lawsuit #1 should be deemed the operative date for the FTCA limitations analysis. Specifically, as relevant here, "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); *accord Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013). We review the district court's ruling on the relation-back doctrine de novo. *See Garrett v. Fleming*, 362 F.3d 692, 695 (10th Cir. 2004).

We may dispose of the Barneses' relation-back argument in summary fashion; by its plain terms, the rule is inapposite. As the district court ably explained, the doctrine of relation back "applies to an amendment to a pleading in the *same* action." Aplt. App. at 100 (emphasis added); *see Marsh v. Soares*, 223 F.3d 1217, 1219 (10th Cir. 2000) ("[A] separately filed claim, as opposed to an amendment or a supplementary pleading, does not relate back to a previously filed claim." (alteration in original) (quoting *Benge v. United States*, 17 F.3d 1286, 1288 (10th Cir. 1994)) (internal quotation marks omitted)); *accord Neverson v. Bissonnette*, 261 F.3d 120, 126 (1st Cir. 2001). In light of the

16

Barneses' concession that Lawsuit #2 "was refiled rather than one where their claim was asserted through amendment," Aplt. Opening Br. at 29, we are hard-pressed to endorse the idea that the relation-back doctrine applies here. The district court did not abuse its discretion in rejecting the Barneses' relation-back challenge.

Therefore, the Barneses' instant action is time-barred under § 2401(b).

**B**

With some circumspection, we ultimately conclude that the district court was correct in determining that, under our precedent, the ineluctable consequence of the Barneses' action being time-barred was that the court lacked subject-matter jurisdiction. The district court therefore properly dismissed the action under Federal Rule of Civil Procedure 12(b)(1).

The government cites to a number of cases indicating that this court "has repeatedly held that '[a]s a threshold matter, timeliness is one of the conditions of the government's waiver of sovereign immunity under the FTCA,'" and, accordingly, "[a federal] court lacks subject matter jurisdiction to proceed under the FTCA if a plaintiff fails to satisfy the FTCA's timing requirements set forth in § 2401(b)." Aplee. Br. at 18–19 (alterations in original) (quoting *Harvey v. United States*, 685 F.3d 939, 947 (10th Cir. 2012)) (internal quotation marks omitted). For many years, our cases have indeed reflected precisely this view. *See, e.g.*, *Harvey*, 685 F.3d at 947; *In re Franklin Sav. Corp.*, 385 F.3d at 1287;

17

*see also Dahl v. United States*, 319 F.3d 1226, 1228 (10th Cir. 2003) ("[I]f a litigant does not satisfy the timing requirement of § 2401(b), the district court must dismiss for lack of subject matter jurisdiction." (citing *Casias v. United States*, 532 F.2d 1339, 1340 n.1 (10th Cir. 1976))).

We must acknowledge, however, that our decisions in this area have not involved rigorous analysis.[5]  In light of significant developments in the Supreme Court's jurisdictional jurisprudence, we question whether our caselaw accurately reflects the current state of the law.  *See, e.g.*, Gregory C. Sisk, *The Continuing Drift of Federal Sovereign Immunity Jurisprudence*, 50 Wm. & Mary L. Rev. 517, 553 (2008) ("[F]or nearly two decades, the Supreme Court has repeatedly turned aside the government's insistence that time limitations should be treated as jurisdictional conditions on the waiver of sovereign immunity."); *id.* at 559

---

[5]  *Harvey*, for example, simply recites (without analysis) language from *In re Franklin Savings Corp.* to the effect that because "timeliness 'is one of the conditions of the government's waiver of sovereign immunity under the FTCA,'" it is a jurisdictional prerequisite to suit.  685 F.3d at 947 (quoting *In re Franklin Sav. Corp.*, 385 F.3d at 1287).  *In re Franklin Savings Corp.* itself provides no greater elaboration, simply stating the same conclusion, supported by a citation to our 2003 opinion in *Dahl*.  *See* 385 F.3d at 1287.  *Dahl* reflects more of the same, explaining briefly that § 2401(b) is a condition on the government's waiver of sovereign immunity and, "[t]hus, if a litigant does not satisfy the timing requirement of § 2401(b), the district court must dismiss for lack of subject matter jurisdiction."  319 F.3d at 1228 (citing *Casias*, 532 F.2d at 1340 n.1).  Our decision in *Casias* is apparently the first case in which we described § 2401(b)'s statute of limitations as jurisdictional.  It also engages in no analysis whatsoever, simply referring to the jurisdictional nature of the limitations provision in a footnote that cites a Ninth Circuit case, *Caton v. United States*, 495 F.2d 635 (9th Cir. 1974).  *See Casias*, 532 F.2d at 1340 n.1.

18

("[T]he statute of limitations governing FTCA claims, which is not included within the general section waiving sovereign immunity and simultaneously conferring district court jurisdiction, presumably would not be given a jurisdictional read and would not constitute a nonwaivable constraint on judicial authority." (footnotes omitted)).  In particular, we are given pause by the Court's seminal decisions in *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990), and *Sebelius v. Auburn Regional Medical Center*, --- U.S. ----, 133 S. Ct. 817 (2013).

In *Irwin*, the Court recognized that 42 U.S.C. § 2000e-16(c)'s filing deadline for Title VII claims "is a condition to the waiver of sovereign immunity and thus must be strictly construed."  498 U.S. at 94.  However, the Court also noted that "previous cases dealing with the effect of time limits in suits against the Government ha[d] not been entirely consistent" and had left "open the general question whether principles of equitable tolling, waiver, and estoppel apply against the Government when it involves a statutory filing deadline."  *Id.*

*Irwin*'s acknowledgment of this open question is significant because such doctrines as equitable tolling and equitable estoppel ordinarily would not apply if statutory filing deadlines are jurisdictional.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121 (2002) (contrasting "jurisdictional prerequisite[s] to filing" with "requirement[s] subject to waiver, estoppel, and equitable tolling"); *accord Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).  Thus, at

19

least arguably, the question that *Irwin* recognized as open was whether statutory filing deadlines in suits against the government are jurisdictional. *See* Sisk, *supra*, at 554 ("Because the Supreme Court 'has no authority to create equitable exceptions to jurisdictional requirements,' the Court's presumptive allowance of equitable tolling of statutes of limitations on claims against the government removes such provisions from the category of jurisdictional commands." (footnote omitted) (quoting *Bowles v. Russell*, 551 U.S. 205, 214 (2007))).

Notably, the Court clarified that where Congress has created a waiver of sovereign immunity, filing deadlines related to the waiver are presumptively subject to such doctrines as equitable tolling:

> Once Congress has made such a waiver, we think that making the rule of equitable tolling applicable to suits against the Government . . . amounts to little, if any, broadening of the congressional waiver. . . . We therefore hold that the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States. Congress, of course, may provide otherwise if it wishes to do so.

*Irwin*, 498 U.S. at 95–96.

In the FTCA context, *Irwin* has caused some courts—including our sister circuits—to seriously question and, in some instances, discard their previous view that § 2401(b)'s limitations provisions are jurisdictional. *See, e.g.*, *Hughes v. United States*, 263 F.3d 272, 278 (3d Cir. 2001) (relying on *Irwin* and noting that "the FTCA's statute of limitations is not jurisdictional"); *Glarner v. U.S. Dep't of*

20

*Veterans Admin.*, 30 F.3d 697, 701 (6th Cir. 1994) ("[T]he VA first argues that the doctrine of equitable tolling cannot apply to § 2401(b) because the latter is a jurisdictional statute of limitations that cannot be equitably tolled. This assertion is incorrect."); *see also State v. Sharafeldin*, 854 A.2d 1208, 1217 (Md. 2004) ("Most of the lower Federal courts have given credence to that language [of *Irwin*], however, have shifted their previously-held view, and have applied equitable tolling principles to untimely claims made to the administrative agency or to untimely lawsuits after denial of the claim."); Jacob Damrill, Note, *Waves of Change Towards a More Unified Approach: Equitable Tolling and the Federal Torts Claims Act*, 50 Tulsa L. Rev. 271, 276 (2014) ("Prior to *Irwin*, federal courts consistently and unanimously held that equitable tolling did not apply to the FTCA because section 2401(b)'s two-year limitations provision was a jurisdictional bar to untimely claims. In the wake of *Irwin*, federal courts reversed course and immediately began to apply equitable tolling to [the] FTCA two-year limitation period." (italics added) (footnotes omitted)).[6]

---

[6] Indeed, one commentator has gone so far as to assert that "every court of appeals to address the question has concluded or suggested that the FTCA provision is not jurisdictional and instead falls within the presumption of *Irwin v. Department of Veterans Affairs*—that statutes of limitations in federal government cases are subject to equitable tolling." Sisk, *supra*, at 559 (italics added) (footnote omitted). However, we are cautious of such broad statements and decline to undertake here a precise jurisprudential headcount regarding the positions of the various courts with respect to the jurisdictional status *vel non* of § 2401(b) and the related issue of equitable tolling. As suggested in text *infra*, the courts' holdings after *Irwin* are not uniform and reflect some confusion, even

(continued...)

In *Auburn Regional*, in 2013, the Court adopted a new analytical framework for assessing whether statutory conditions on lawsuits against the United States were jurisdictional. The Court recognized that through a series of cases it had "'tried . . . to bring some discipline to the use' of the term 'jurisdiction.'" *Auburn Reg'l*, 133 S. Ct. at 824 (quoting *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 131 S. Ct. 1197, 1202 (2011)). In these opinions the Court had, in particular, explained time and again that statutes of limitations are not always—and, indeed, presumptively are *not*—jurisdictional. The touchstone standard laid out in these cases "for determining whether to classify a statutory limitation as jurisdictional" is a "readily administrable bright line" rule. *Id.* (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006)) (internal quotation marks omitted); *see also Utah ex rel. Utah Dep't of Envtl. Quality v. U.S. EPA*, 765 F.3d 1257, 1258 (10th Cir. 2014) ("Filing deadlines can be jurisdictional or non[-]jurisdictional. To decide which deadlines are jurisdictional, we apply a 'bright-line' rule.").

Fundamentally, this framework "focuses on Congress's stated intention." *Utah*, 765 F.3d at 1258; *see Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1157 (10th Cir. 2013) (en banc) (Gorsuch, J., concurring) ("T[he] rule requires us

---

⁶(...continued)
within circuits, regarding these issues. It is clear, however, that *Irwin* caused several courts to rethink their historical position that the FTCA's limitations provisions are jurisdictional.

22

to 'inquire whether Congress has clearly stated that the rule is jurisdictional; absent such a clear statement . . . courts should treat the restriction as nonjurisdictional in character.'" (omission in original) (quoting *Auburn Reg'l*, 133 S. Ct. at 824)), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, --- U.S. ----, 134 S. Ct. 2751 (2014).

In applying this bright-line test, "we focus on the legal character of the deadline, as shown through its text, context, and historical treatment." *Utah*, 765 F.3d at 1258; *see Hobby Lobby Stores, Inc.*, 723 F.3d at 1158 (Gorsuch, J., concurring) ("In addition to [consulting the] statutory text, we may when necessary consider as well 'context, including [the Supreme] Court's interpretation of similar provisions in many years past.'" (second alteration in original) (quoting *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 168 (2010))). "Statutes that speak clearly to 'the courts' statutory or constitutional *power* to adjudicate the case' must of course be treated as jurisdictional and given their full effect," *Hobby Lobby Stores, Inc.*, 723 F.3d at 1157–58 (Gorsuch, J., concurring) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)), "[b]ut statutes that speak to the rights or obligations of parties to a lawsuit establish 'claim-processing rules,'" and "should not be treated as 'jurisdictional prescriptions,'" *id.* at 1158 (quoting *Reed Elsevier*, 559 U.S. at 161).

Our research has unearthed three decisions of our sister circuits that have addressed the jurisdictional status *vel non* of the FTCA's limitations provisions

23

(specifically, § 2401(b)) since *Auburn Regional*.[7]  In two of those decisions,

separate circuits—the Ninth (en banc) and the Seventh—concluded, in explicit

reliance on *Auburn Regional*, that the limitations provisions were not

jurisdictional.  *See Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1047 (9th Cir. 2013)

(en banc) ("In short, nothing in the text, context, or purpose of § 2401(b) clearly

indicates that the FTCA's six-month limitations period implicates the district

---

[7]     Although we have not applied *Auburn Regional*'s bright-line rubric in the FTCA context, we have employed it in other settings.  For example, in *United States v. McGaughy*, 670 F.3d 1149 (10th Cir. 2012), we applied the test to the fourteen-day time limit in Federal Rule of Criminal Procedure 35(a).  There, we noted that "[t]o be jurisdictional, the restriction on the court's authority not only must be specified by Congress—it must also express a clear Congressional intent to be jurisdictional," and wrote that the Supreme Court's decision in *Gonzalez v. Thaler*, --- U.S. ----, 132 S. Ct. 641 (2012), "suggests courts must look to a restriction's 'textual, contextual, and historical backdrop.'" *McGaughy*, 670 F.3d at 1156 (quoting *Gonzalez*, 132 S. Ct. at 652 n.8).  The statutory provision underpinning Rule 35(a) used overtly jurisdictional language. It provided that "*[t]he court* may not modify a term of imprisonment once it has been imposed except that . . . *the court* may modify an imposed term of imprisonment to the extent otherwise expressly permitted by . . . Rule 35."  18 U.S.C. § 3582(c)(1)(B) (emphases added).  Accordingly, we held that Rule 35(a)'s deadline was "given jurisdictional force by the very provision authorizing courts to correct errors."  *McGaughy*, 670 F.3d at 1158.  Similarly, in *Emann v. Latture (In re Latture)*, 605 F.3d 830 (10th Cir. 2010), we concluded that Federal Rule of Bankruptcy Procedure 8002(a)'s time limit for filing an appeal in a bankruptcy matter was jurisdictional largely because the statutory provision imposing this time limit, 28 U.S.C. § 158(c)(2), was "located in the same section [of the statute] granting . . . jurisdiction to hear appeals."  605 F.3d at 837.  Most recently, in *Utah ex rel. Utah Department of Environmental Quality v. U.S. EPA*, we applied the bright-line rule in concluding that the sixty-day deadline for filing a petition for judicial review under the Clean Air Act is a jurisdictional limit.  *See* 765 F.3d at 1258.  Citing *Auburn Regional*, we examined "the textual, contextual, and historical treatment" of the statutory deadline and concluded that all of these factors supported that conclusion.  *Utah*, 765 F.3d at 1262.

24

courts' adjudicatory authority. We therefore hold that § 2401(b) is a nonjurisdictional claim-processing rule subject to the presumption in favor of equitable tolling . . . ."), *cert. granted*, --- U.S. ----, 134 S. Ct. 2873 (2014); *Arteaga v. United States*, 711 F.3d 828, 833 (7th Cir. 2013) ("With regard to the Federal Tort Claims Act, the presumption that the deadline for exhausting remedies is not jurisdictional, far from being rebutted by clear statutory language, is confirmed by such language . . . . [W]e think the answer is that [the FTCA statute of limitations] can be tolled—and we doubt that the contrary approach has survived the Supreme Court's decision in the *Auburn Regional Medical Center* case." (citations omitted)).

And in the third decision, in light of *Auburn Regional* and its progeny, the First Circuit has cast doubt on the correctness of its caselaw that has concluded that § 2401(b)'s limitations provisions are jurisdictional. Specifically, the First Circuit acknowledged that it had "previously opined that the FTCA's timeliness requirements are jurisdictional." *Sanchez v. United States*, 740 F.3d 47, 54 (1st Cir.), *cert. denied*, --- U.S. ----, 135 S. Ct. 54 (2014). However, surveying the post-*Auburn Regional* jurisprudential landscape, the court stated as follows: "The Supreme Court's most recent guidance on what is 'jurisdictional' suggests that we may have erred in presuming that subject matter jurisdiction hinged on compliance with the FTCA's deadlines for presenting claims." *Id.*

Thus, in light of *Irwin* and *Auburn Regional*, we harbor some reservations

25

regarding whether our existing precedent relating to the jurisdictional status *vel non* of § 2401(b)'s time limitations is good law. However, "[w]e are bound by the precedent of prior panels absent en banc reconsideration or *a superseding contrary decision by the Supreme Court*." *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) (per curiam) (emphasis added); *see, e.g.*, *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 985 (10th Cir. 1996) (noting that, "[a]bsent an *intervening Supreme Court* or en banc decision justifying such action, we lack the power to overrule [prior Tenth Circuit precedent]" (emphasis added)). With due respect for existing precedent, we cannot conclude that the collective message of *Irwin* and *Auburn Regional* is so indisputable and pellucid in the FTCA context that it constitutes intervening (i.e., superseding) law that would permit us to hold (without en banc consideration) that § 2401(b)'s limitations provisions—and, in particular, the six-month provision—are *non*jurisdictional.

Neither *Irwin* nor *Auburn Regional* involved § 2401(b), nor did these cases construe its terms. Furthermore, if the judicial reception of *Irwin* and the related Supreme Court cases that followed on its heels is any indication, we can be confident of at least one thing: the collective direction of *Irwin* and *Auburn Regional* is likely to be the subject of judicial debate and confusion in the FTCA context. In this regard, we note that *Irwin* and the related cases of the Court issued relatively soon thereafter have even generated intra-circuit inconsistencies. *Compare, e.g.*, *Perez v. United States*, 167 F.3d 913, 915–16 (5th Cir. 1999)

26

(holding § 2401(b)'s limitations provisions nonjurisdictional after observing that *Irwin* "undid the old rule that equitable tolling was never available against the government, and thus placed the jurisdictional nature of the FTCA statute of limitations into doubt"), *Glarner*, 30 F.3d at 701 (holding on behalf of the Sixth Circuit that the FTCA's limitations provisions are not jurisdictional and subject to equitable tolling), *and Schmidt v. United States*, 933 F.2d 639, 640 (8th Cir. 1991) ("Because the FTCA's statute of limitations is not jurisdictional, failure to comply with it is merely an affirmative defense which the defendant has the burden of establishing."), *with Jackson v. United States*, 751 F.3d 712, 719 (6th Cir. 2014) (citing *Glarner* and noting that "whether the time limitations in the FTCA are jurisdictional in nature" is an issue that "has prompted some variance within this circuit," and noting that it "need not decide the issue of whether the time limitations in the FTCA are jurisdictional in nature"), *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 646 F.3d 185, 189, 191 (5th Cir. 2011) (per curiam) (without citing *Irwin* or *Perez*, holding that "[t]he FTCA's statute of limitations is jurisdictional" and that the plaintiff's claim thus "should not be equitably tolled"), *and T.L. ex rel. Ingram v. United States*, 443 F.3d 956, 961 (8th Cir. 2006) (distinguishing but not clearly overruling *Schmidt* in concluding that "there is no inconsistency between viewing compliance with the statute of limitations as a jurisdictional prerequisite and applying the rule of equitable tolling"). In short, "[n]ot all of the Federal courts" in *Irwin*'s wake have taken

27

the same approach on the jurisdictional question. *Sharafeldin*, 854 A.2d at 1217; *see id.* at 1217–18 & n.6 (collecting cases).[8]

Thus, we ultimately adhere to our existing precedent and hold that the district court properly dismissed the Barneses' FTCA lawsuit on jurisdictional grounds after correctly determining that the action was time-barred.

## C

Because the six-month statute of limitations is jurisdictional, the Barneses cannot, as a matter of law, avail themselves of the doctrines of equitable estoppel or equitable tolling in seeking to excuse the otherwise tardy lawsuit. *See, e.g.*, *Nat'l R.R. Passenger Corp.*, 536 U.S. at 121; *Zipes*, 455 U.S. at 393. However, like the district court, we feel constrained to observe that, even if these doctrines were available to the Barneses, they could secure no relief under them. "We review the district court's refusal to apply the doctrine of equitable estoppel for abuse of discretion." *Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 957 (10th Cir. 2009) (quoting *Spaulding v. United Transp. Union*, 279 F.3d 901, 911 (10th Cir. 2002)) (internal quotation marks omitted). Likewise, "[w]e review the district court's refusal to apply equitable tolling for an abuse of

---

[8]     We are cognizant in any event that the Supreme Court has granted certiorari in the Ninth Circuit's *Kwai Fun Wong* case, where the question presented relates to whether the FTCA's limitations provisions are jurisdictional. *See* Resp't Br., *United States v. Kwai Fun Wong*, No. 13-1074, 2014 WL 5804278, at i (Nov. 4, 2014) ("Is the six-month limit for filing suit under the Federal Tort Claims Act, 28 U.S.C. § 2401(b), jurisdictional?"). Presumably, the Court will shed some light on the matter.

28

discretion." *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004)

(quoting *Garrett*, 362 F.3d at 695).

## 1

The "doctrine[ ] of equitable estoppel . . . may bar a defendant from enforcing a statute of limitation when its own deception prevented a reasonably diligent plaintiff from bringing a timely claim." *Auburn Reg'l*, 133 S. Ct. at 830 (Sotomayor, J., concurring). However, "winning an equitable estoppel argument against the government is a tough business." *Wade Pediatrics v. Dep't of Health & Human Servs.*, 567 F.3d 1202, 1206 (10th Cir. 2009). In this circuit, four basic elements are necessary to obtain equitable estoppel against the government:

> (1) the party to be estopped must know the facts; (2) he must intend that his conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe that it was so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

*Tsosie v. United States*, 452 F.3d 1161, 1166 (10th Cir. 2006) (quoting *Lurch v. United States*, 719 F.2d 333, 341 (10th Cir. 1983)) (internal quotation marks omitted).

In addition to these four basic elements, we have required plaintiffs to make a showing of "affirmative misconduct" on the part of the government. *See Wade Pediatrics*, 567 F.3d at 1206; *Tsosie*, 452 F.3d at 1166. We need not address each of the four elements at length, because in any event, the Barneses have patently failed to establish "affirmative misconduct" by the government

29

here. In this regard, even if we were to assume that the government failed to clearly indicate its intention to invoke § 2401(b)'s six-month statute of limitations, and that the Barneses relied upon this failure in electing not to file Lawsuit #2 earlier, the Barneses have not even alleged, let alone made any showing, that the government's failure was an act of "affirmative misconduct."[9] Consequently, the district court did not abuse its discretion in rebuffing the Barneses' equitable-estoppel argument.

**2**

We now turn to the Barneses' argument that the statute of limitations in this case should have been equitably tolled. The district court, operating on the belief that the timeliness requirement was jurisdictional, found that tolling was unavailable. However, it noted in the alternative that even "if the doctrine of equitable tolling was applicable, the court would still find plaintiffs' claims time-barred." Aplt. App. at 102–03. We agree with the district court that the

---

[9] At most, the Barneses accuse the government of being sloppy with language. However, the undisputed text of the letter the BATF sent the Barneses denying their administrative claims referred directly to the sixth-month limitation: "If you[ ] . . . are dissatisfied with this action, a lawsuit must be filed in an appropriate United States district court not later than six months after the date of the mailing of this notification." Aplt. App. at 37. Nevertheless, the Barneses argue that this letter was unclear, complaining that "[i]f the [government] intended the Appellants to have 'originated' or 'instituted[,'] and not merely 'filed' an action, . . . they . . . could have used those words expressly enumerating a first-time commencement." Aplt. Opening Br. at 28. In light of the Barneses' failure to allege any affirmative misconduct on the part of the government, advancing this grievance cannot secure them relief.

30

Barneses' claims here would be time-barred even assuming the availability of equitable tolling.

The Supreme Court has recently reiterated that "the general purpose of statutes of limitations [is] 'to protect defendants against stale or unduly delayed claims.'" *Credit Suisse Sec. (USA) LLC v. Simmonds*, --- U.S. ----, 132 S. Ct. 1414, 1420 (2012) (quoting *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008)). And, under "long-settled equitable-tolling principles[,] '[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way.'" *Id.* at 1419 (emphasis omitted) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The Court has "held that 'a garden variety claim of excusable neglect,' such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." *Holland v. Florida*, 560 U.S. 631, 651–52 (2010) (citations omitted) (quoting *Irwin*, 498 U.S. at 96, and *Lawrence v. Florida*, 549 U.S. 327, 336 (2007)).

Furthermore, as particularly pertinent to these facts, in *Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith*, 477 F.3d 1155 (10th Cir. 2007), we held that equitable tolling was unavailable where a plaintiff had "ample opportunity"—one month—to file a motion to vacate in a timely fashion, even though "he had no way of knowing about" the grounds for this motion until two

31

months of the applicable three-month time limit had already elapsed. *Id.* at 1158; *see Impact Energy Res., LLC v. Salazar*, 693 F.3d 1239, 1247 (10th Cir. 2012) (citing with approval D.C. Circuit precedent "den[ying] equitable tolling unless a delay in notification 'makes it impossible reasonably for the party to comply with the filing statute'" (quoting *Gardner v. FCC*, 530 F.2d 1086, 1091 n.24 (D.C. Cir. 1976))).

Similarly, in *Impact Energy Resources*, we held that, where the plaintiffs had more than eighty days in which to timely file their claims and did not claim that the delay "meaningfully limited their ability to comply with the . . . statute of limitations," equitable tolling was unmerited. 693 F.3d at 1247–48. Indeed, we noted that even forty-five days (the amount of time the plaintiffs claimed was available to them) was "longer than the thirty days approved in *Pfannenstiel*." *Id.* at 1248.

In the present case, the district court explained why, in its view, equitable tolling could not save the Barneses:

> [The Barneses] had a month after the dismissal of their claims against the government (until April 25, 2012) to refile their claims, but instead waited until August 22, 2012, to file their lawsuit, more than four months later. While plaintiffs may have been unaware that the government would argue their claims were untimely, they were aware, from the time the case was removed, that the government had taken the position that the court lacked subject matter jurisdiction over their FTCA claims. If plaintiffs had researched the issue when it was first raised and proceeded to dismiss and then refile their claims against the United States, their claims would not have been barred.

32

Aplt. App. at 103. Reviewing this aspect of the court's order, it is plain that the district court did not abuse its discretion.

The Barneses essentially ask the court to toll the statute of limitations in this case due to their misunderstanding of the law. They assail as "unfair[ ]" the district court's "suggest[ion] that the Appellants were being inattentive in refiling" when they did, and they explain that "the Appellants had every reason to believe there was no statute of limitation issue." Aplt. Opening Br. at 22–23. Such arguments amount to no more than a contention of excusable neglect, and that is not good enough. *See Holland*, 560 U.S. at 651–52.

Significantly, the Barneses plainly failed to pursue their rights diligently, as required by our caselaw. Just like the plaintiffs in *Pfannenstiel* and *Impact Energy Resources*, the Barneses had ample opportunity in which to timely file, but failed to do so. After Lawsuit #1 was dismissed without prejudice on March 23, 2012, they had more than thirty days (the threshold identified in *Impact Energy Resources*, 693 F.3d at 1248) during which they could have refiled in compliance with § 2401(b). Instead, they did not do so for five months.[10]

---

[10] We note, moreover, that the fact that the Barneses had only a month in which to refile was a result of their own failure to take reasonably diligent steps. As the district court noted, the Barneses knew as early as September 2011, when Lawsuit #1 was removed to federal district court, that there was at least potentially a jurisdictional issue with that first lawsuit due to their having filed in state court. At any point thereafter, the Barneses could have voluntarily dismissed their claim and refiled, thereby avoiding the entire problem now before

(continued...)

33

The Barneses' only response to any of this appears to be that they did not believe there was any urgency to refile, based on their belief that, having deemed their administrative claims denied and having filed Lawsuit #1, they were no longer subject to *any* statute of limitations. But, as we have explained, this belief reflects a wholly unjustified and unprecedented interpretation of § 2401(b) and § 2675(a). Moreover, the BATF's final denial of the Barneses' administrative claims in this case expressly advised the Barneses that they had six months thereafter in which to file a lawsuit in an appropriate federal court, putting the Barneses on notice that, whatever their own understanding of the law, the *government* believed that the six-month statute of limitations began to run on October 25, 2011.

In sum, the Barneses had at least a full month after the district court dismissed Lawsuit #1 during which they could have timely refiled. They did not do so, nor have they alleged any other extraordinary circumstances that would have prevented them from doing so. Consequently, even if it were available to them, the Barneses could have gained no succor from the equitable-tolling doctrine. The district court thus did not abuse its discretion in refusing to toll the statute of limitations on the Barneses' claims.

---

[10](...continued)
us.

34

## III

For the reasons set forth above, the district court correctly held that the Barneses' claims in this matter were time-barred under the six-month statute of limitations in 28 U.S.C. § 2401(b) and properly dismissed the action for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). We observe, however, that the district court dismissed the lawsuit *with* prejudice. Jurisdictional dismissals ordinarily should be entered *without* prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) ("[O]ur prior, long-standing line of cases requir[es] that a dismissal for lack of jurisdiction be without prejudice."); *Albert's v. Smith's Food & Drug Ctrs., Inc.*, 356 F.3d 1242, 1249 (10th Cir. 2004) ("In cases where the district court has determined that it lacks jurisdiction, dismissal of a claim must be without prejudice."). Accordingly, in our ultimate disposition, we remand to the district court to correct the judgment by entering a *without*-prejudice dismissal.

## IV

For the foregoing reasons, we **AFFIRM** the judgment of the district court dismissing the Barneses' action for lack of subject-matter jurisdiction. We **REMAND** the case with instructions to the district court to enter a dismissal *without* prejudice.

**KELLY**, Circuit Judge, concurs in the result.

35